# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| FRANK D. MONSEGUE, SR., | ) |
| Plaintiff, | ) |
| v. | ) CV418-239 |
| JUDGE WILLIAM T. MOORE, *et al.*, | ) |
| Defendants. | ) |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Frank Monsegue, Sr., brings this *Bivens* action[1] against the judges, prosecutors, and law enforcement officers involved in his federal criminal prosecution.[2] CV418-

---

[1] A *Bivens* case challenges the constitutionality of federal officials' conduct, while 42 U.S.C. § 1983 challenges the constitutionality of state officials' conduct. Because of the similarity in the causes of action, the courts "apply § 1983 law to *Bivens* cases." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (quoting *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995)). "The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980). Thus, "the immunities provided federal officials in *Bivens* actions are coextensive with those provided state officials in § 1983 actions." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). *See also Butz v. Economou*, 438 U.S. 478, 500 (1978) (a federal official sued under *Bivens* has the same immunity as a similar state official sued for identical violation under § 1983).

[2] In his Complaint, Monsegue names United States District Judge William T. Moore, Jr. and Magistrate Judges G.R. Smith and Marilyn D. Go. He also names United States

239, docs. 1 & 6. The Court granted plaintiff's request to pursue his case in *forma pauperis* (IFP), doc. 5, and he returned the necessary forms. Docs. 8 & 9. The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint that fails to state at least one actionable claim against a governmental entity or official.[3]

I. BACKGROUND

Some background is necessary to illuminate Monsegue's history with this Court. Monsegue pled guilty to wire fraud conspiracy, theft of government property, and aggravated identity theft for his role in a tax refund fraud conspiracy. *See* CR414-019, docs. 3 (indictment), 29 (superseding indictment), 109 (minute entry), 110 (judgment for 87

---

Attorneys Hiral D. Mehta, Daniel R. Crumby, Brian T. Rafferty, Edward J. Tarver, James D. Durham, Theordore S. Hertzberg, and T. Shane Mayes; Federal Defender Mildred M. Whalen; Deputy United States Marshal Thomas Jack; IRS Criminal Investigation Special Agent Andres Hernandez; (CJA-appointed and retained) defense attorneys Kindra Baer, Daveniya E. Fisher, and Murdoch Walker II; and private corporations Bank of America, Sun Trust Bank, and E-Trade Bank. Doc. 6 at 2-7.

[3] A claim is frivolous if it is without arguable merit either in law or fact. *Battle v. Central State Hospital*, 898 F.2d 126, 129 (11th Cir. 1990); *see also Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) ("A case is frivolous . . . when it appears the plaintiff 'has little or no chance of success.'") (internal cites omitted). Even when a complaint legally states a claim and the facts are not fantastic, a dismissal on grounds of frivolousness might be justified. *See Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 640 (11th Cir. 1990) (absolute immunity of defendants justifies dismissal of a claim as frivolous).

2

months' imprisonment). He initially chose to plead not guilty, *id.*, docs. 119 & 120, but changed his mind (for the first time) midway through *voir dire* of the jurors for his trial. *Id.*, doc. 121 at 17 (counsel gave a note to the Court indicating that movant "now wishes to change his plea."). He then vacillated again because he was "not prepared" to be taken immediately into custody, *see id.*, doc. 125 at 6-7 ("Your Honor, we do not have an agreement. The defendant has changed his mind."), but after counsel conferred again on the proposed plea agreement, Monsegue (again) elected to enter a last-minute plea of guilt while the empaneled jury waited in the wings. *Id.*, doc. 75 (Rule 11 hearing) at 4.

Vacillating yet again, Monsegue unsuccessfully attempted to withdraw his guilty plea. *E.g.,* CR414-019, doc. 77. He then missed his sentencing hearing (apparently due to counsel's failure to notify him of the upcoming date), and promptly fled to New York when a bench warrant was issued for his arrest. *See id.*, doc. 122 at 7-10, 19-20. He was captured and returned to this District for sentencing. Docket Entry dated May 12, 2015 (reflecting arrest); *see also id.*, doc. 96 (arrest warrant returned executed); *id.*, docs. 109 & 110 (sentencing minutes and judgment). He did not appeal, *see id.*, doc. 111 (signed post-conviction certification

declining to appeal conviction), but moved instead to vacate his sentence under 28 U.S.C. § 2255. *Id.*, doc. 116. That motion was denied on the merits, *id.*, docs. 136, 142 & 143, and the Eleventh Circuit denied his motion for a certificate of appealability, *id.*, docs. 153 & 154. He is currently serving a sentence of 87 months, with credit already applied for time served, and repaying $432,583.86 in restitution to the Internal Revenue Service, to be paid jointly and severally with his codefendant. *Id.*, doc. 122 at 24.

Stymied in his pursuit of collateral relief, Monsegue is back with several theories as to how his civil rights have been violated. CV418-239, docs. 1 & 6. He seeks $15 million from each actor that he believes responsible for his incarceration. Doc. 6. But he sues defendants immune from suit long after the statute of limitations has closed, to undermine a valid, standing conviction.

## II. ANALYSIS

### A. Time-Barred Claims

The statute of limitations for § 1983 claims "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (cite omitted). Under Georgia law, the statute of limitations for

such claims is two years. O.C.G.A. § 9-3-33; *see Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*).

Liberally construed, Monsegue waves at excessive force and denial of medical care claims. When Deputy Marshal Thomas captured him in New York, Monsegue alleges that his brother was unnecessarily "handcuff[ed] with his hands behind his back." Doc. 6 at 15. Monsegue himself "was then t[h]rown on the bed and elbowed in the right side of [his] head" and not subsequently provided with medical care. *Id*. As a threshold matter, constitutional rights violations cannot be vicariously asserted. *See Tileston v. Ullman*, 318 U.S. 44, 46 (1943). Even if his brother's rights were violated, therefore, Monsegue's claim for damages for those violations would still be subject to dismissal.

Further, pretermitting any analysis of whether Monsegue's allegations of denial of medical care or excessive force rise to the level of constitutional magnitude, *compare* doc. 6 at 15 (admitting that after being subjected to an allegedly excessively forceful arrest, he sustained no

injuries and "no medical aid was needed"), *with* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . without a prior showing of physical injury."); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); *id.* (noting the arresting officer Farrell permissibly "grabbed plaintiff's arm, twisted it around [his] back, jerking it up high to the shoulder and then handcuffed [him] as [he] fell to his knees screaming that Farrell was hurting him," which is a "handcuffing technique" that is "a relatively common and ordinarily accepted non-excessive way to detain an arrestee"), any claim arising from his arrest clearly falls outside the two-year statute of limitations. Excessive force claims accrue when the alleged use of excessive force occurred. *See Baker v. City of Hollywood*, 391 F. App'x 819, 821 (11th Cir. 2010). Monsegue's pre-sentencing seizure in New York occurred in May 2015, more than three years before he filed his *Bivens* complaint. Doc. 6 at 15. Any claim arising from those events is time-barred.

Monsegue also levies a claim for false arrest or false imprisonment, a tort which affords a remedy for detention without legal process. *See*

*Kato*, 549 U.S. at 389 (a false arrest claim based on a warrantless arrest is "a species" of a false imprisonment claim). As damages for a false arrest claim "cover the time of detention up until issuance of process or arraignment, but not more," *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), a claim for false arrest accrues upon detention. In a case of continuing detention (as here), however, "false imprisonment ends once the victim becomes held pursuant to [legal] process — when, for example, he is bound over by a magistrate or arraigned on charges." *Id*. at 389-90.[4] Here, any action accrued at Monsegue's felony arraignment held March 20, 2014. *See United States v. Monsegue*, CR414-019, doc. 41. Any claim now asserted, more than four years later, is clearly time-barred as well.

---

[4] Once an arrestee's unlawful detention becomes a product of legal process, his continued custody may indeed still be unlawful, but any damages suffered after that point must be recovered under the "entirely distinct" tort of malicious prosecution, "which remedies detention accompanied not by the absence of legal process, but by *wrongful institution* of legal process." *Kato*, 549 U.S. at 390; *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (malicious prosecution is "a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."). But an essential element of a malicious prosecution claim is the termination of the criminal prosecution in the plaintiff's favor. *Id*. at 882. And there can be no allegation that the criminal case has been resolved in Monsegue's favor. *See* doc. 1; *see* CR414-019, doc. 110 (sentenced to 87 months' imprisonment and repayment of restitution and special assessment on July 27, 2015).

## B. Immune Defendants

Regardless of the timeliness of his claims, Monsegue has sued a panoply of individuals and entities not subject to § 1983 liability. Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996). This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction, *see Stump*, 435 U.S. at 356; *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986), and extends to all claims, whether for damages or for injunctive relief, *Bolin*, 225 F.3d at 1239-42. The only remedy for a judge's errors is appeal, and plaintiff declined to appeal his guilty plea (*see* CR414-019, doc. 111). *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) (a judge's "errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation."); *Forrester v. White*, 484 U.S. 219, 227 (1988) ("Most

judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.").

Prosecutors, too, are entitled to absolute immunity from damages for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the Government's case. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (state prosecutors have absolute immunity under § 1983 when initiating a prosecution and when presenting a state's case); *Bolin*, 225 F.3d at 1242 (extending that immunity to federal prosecutors in *Bivens* actions). This is a wide-ranging immunity: prosecutorial immunity protects prosecutors for *all* actions they take while performing their functions as advocates for the government. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002). Under these principles, even if he or she "knowingly proffers perjured testimony and fabricated exhibits, [a prosecutor] is entitled to absolute immunity from liability for doing so." *Rowe*, 279 F.3d at 1279-80; *see also Buckley*, 509 U.S. at 273;

*Hart*, 587 F.3d at 1295.[5]

Further, because neither federal defenders nor court-appointed counsel are "federal officials" acting under "color of law," no *Bivens* right of action against them exists. *See e.g., Cohen v. Hurson*, 623 F. App'x 620, 620 (4th Cir. 2015); *Stamper v. Bouldin*, 46 F. App'x 840, 841 (6th Cir. 2002); *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990); *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982). Retained counsel, too, can have no liability under *Bivens*.[6] *Bivens* "excludes from its reach

---

[5] As Monsegue does not clearly describe what the individual U.S. Attorney defendants did in his case, it is unclear whether he believes any are liable solely as supervisors named to his "2255, 2241 and default motions, while having access to all [his] files." Doc. 6 at 9. But it does not matter. No claim based on vicarious liability exists under *Bivens* or § 1983. *Aschcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution."). To the extent that the plaintiff named Durham or Tarver as defendants in their role as supervisors of Assistant United States Attorneys, any such claim is barred. *Bivens* only permits claims against government officials in their personal capacities. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend *Bivens* liability to federal agencies); *Nails v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 297-98 (11th Cir. 2009) (*Bivens* claims are not actionable against federal agencies or federal officers acting in their official capacities). Put differently, "supervisory officials are not liable under [*Bivens*] for the unconstitutional acts of their subordinates." *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003) (alteration in original) (cites omitted).

[6] Should Monsegue actually be attempting to bring a legal malpractice claim against his various attorneys, such a claim is governed by state law and must be brought in state court. *See e.g., Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (federal law does not provide a cause of action for legal malpractice); *Ray v. Tenn. Valley Auth.*, 677 F.2d 818, 825 (11th Cir. 1982) (federal courts lack jurisdiction over legal

merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (cite and quotes omitted). Witnesses in a criminal action also enjoy absolute immunity absolute witness immunity. *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983).

### C.  Non-State Actors

Finally, banks are not "state actors" subject to § 1983 liability unless their actions are properly attributed to the state. *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). To show "state action" exists, a plaintiff must allege either that private actors are performing functions "traditionally the exclusive prerogative of the state," the Government "has coerced or at least significantly encouraged the action alleged to violate the Constitution," or "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Nat'l Broad. Co., Inc. v. Commns. Workers of Am., ALF-CIO*, 860 F.2d 1022, 1026-27 (11th Cir. 1988). "To charge a private party with [s]tate action under this standard, the

---

malpractice under state law because diversity is lacking and the claim does not present a federal question).

governmental body and private party must be intertwined in a symbiotic relationship. The Supreme Court has indicated that the symbiotic relationship must involve the 'specific conduct of which the plaintiff complains.'" *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (cite omitted). Here, by contrast, Monsegue complains that private banks responded to "defective" IRS summons and subpoenas. Doc. 6 at 10. That is nowhere near the realm of state action that could bring these companies within the ambit of *Bivens* liability.[7]

---

[7] To the extent Monsegue swings at a claim under the Right to Financial Privacy Act, doc. 6 at 10, such an effort would be misguided. *See* 12 U.S.C. § 3402 *et seq.* (protecting, generally, the customers of financial institutions from unwarranted intrusion into their records by providing that government access to records be allowed only if pursuant to a valid, written customer authorization after notice to the customer).

Under § 3413(i), disclosure pursuant to issuance of a subpoena or court order respecting a grand jury proceeding is exempted from all provisions of the Act except, § 3415, the reimbursement section, and § 3420, which controls the nature of the search. This special exemption for grand jury subpoenas was created to protect the grand jury system. "Expanded notice and challenge rights in the grand jury context could seriously jeopardize its traditional secrecy and, in so doing, pose a considerable threat to the privacy rights of individuals being investigated." Hearings on S 2096, S 2293, and S 1460 before the Senate Subcommittee on Financial Institutions of the Committee on Banking, Housing and Urban Affairs, 95th Cong., 2d Sess. 188 (May 17, 1978) (statement of Deputy Attorney General Benjamin R. Civiletti).

Indeed, "the language of both the Act and the Internal Revenue Code, the legislative history of the Act, and several secondary authorities all point to the conclusion that the Act does not proscribe informal access to bank records by I.R.S. agents." *Raikos v. Bloomfield State Bank*, 703 F. Supp. 1365, 1372 (S.D. Ind. 1989).

Even if his claim did not fall under a clear exception to the Act, of course, it too is time-barred. Any action under the Act must be filed "within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416. "The date of discovery is not the date when plaintiff realizes

**D. *Heck*-Bar**

Even if not barred by the defendants' various immunities or the statute of limitations, finally, Monsegue's action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by unlawful actions which would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

---

he has a legal cause of action; rather, it is the date on which plaintiff becomes aware of the alleged injury." *Giannone v. Bank of America*, 812 F. Supp. 2d 216, 220-21 (E.D.N.Y. 2011) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Monsegue has been aware of the "defective" summons issued to these banks since August 27, 2014 *at the latest*. *See, e.g.* docs. 73 & 75 (Rule 11 plea hearing where Special Agent Hernandez testified about his investigation and summons issued to Monsegue's banks); doc. 77 at 2-3 (moving to withdraw guilty plea and noting he would be moving to "challenge the constitutionality of evidence gathering tactics utilized by Agent Hernandez" because "Agent Hernandez violated the Right of Financial Privacy Act[.]"). This Complaint, of course, was filed more than four years later — outside of time yet again.

To the extent he seeks to relitigate the constitutionality of these summons, it bears repeating: any claim that "the subpoena for Monsegue's bank records violated his privacy rights fails as a matter of law. *See United States v. Centennial Builders, Inc.*, 747 F.2d 678, 683 (11th Cir. 1984) ('An Internal Revenue summons directed to a third party bank or accountant does not violate the Fourth Amendment rights of a taxpayer under investigation since the records belong to the summoned party and not the taxpayer: the taxpayer has no privacy interest in the documents.')." CR414-019, doc. 136 at 11 n. 4.

question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. A claim for damages based on a conviction or sentence that has not been so invalidated is not cognizable under *Bivens*. *Id*. at 487.

A challenge to the fact or duration of a prisoner's confinement — regardless of the label the plaintiff places on the action — is properly treated as a habeas corpus claim, *McKinnis v. Mosley*, 693 F.2d 1054, 1057 (11th Cir. 1982), and those claims simply are not cognizable under § 1983 or *Bivens*. *Abella*, 63 F.3d at 1065 (because "collateral attacks on federal criminal convictions pose the same threat to the finality of federal criminal trials and have the same potential for creating inconsistent results as collateral attacks on state court proceedings," the *Heck* rule extends to *Bivens* damages claims); *see also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). To the extent that Monsegue's claims of impropriety in his prosecution would impugn the validity of his conviction (which has not been invalidated or otherwise set aside), they are barred under *Heck*. *See e.g., Pritchett v. Farr*, 592 F. App'x 816, 817 (11th Cir. 2014). Plaintiff's only recourse is a habeas action, *see, e.g., Salazar v. U.S. Att'y General*, 476 F. App'x 383, 385-86 (11th Cir. 2012) (citing *Skinner v. Switzer*, 562 U.S. 521, 536-37 (2011)), and he has already exhausted that route to no

avail. Docs. 116, 136, 142, 143, 153 & 154. In sum, and for myriad reasons, Monsegue's Complaint should be **DISMISSED**.

## III. CONCLUSION

Though a *pro se* prisoner normally should be given an opportunity to amend his complaint at least once, *see, e.g., Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014); *Duff v. Steub*, 378 F. App'x 868, 872 (11th Cir. 2010), "a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). Plaintiff's time-barred *Bivens* claims against immune defendants is dead on arrival and *Heck*-barred, and does not appear amendable.[8]

Accordingly, Frank Monsegue, Sr.'s Complaint should be **DISMISSED without prejudice**. Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects $85.04 in average monthly

---

[8] Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation (R&R) within 14 days of service, see *infra*, affords him an opportunity to resuscitate his case. He may also submit an Amended Complaint during that period if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163, at * 2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503, at * 1 (W.D. Mich. Jan. 19, 2011)). To state a claim, however, plaintiff must be able to both plead the requisite elements of his § 1983 claims *and* identify a defendant who is not immune from suit.

deposits over the six month period prior to the date of his Prison Account Statement. Doc. 8. He therefore owes an initial partial filing fee of $17.02. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall remit the $17.02 to the Clerk of Court and set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[9]

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections

---

[9] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 5th day of February, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA